CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 15 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| LARRY W. WHITE, | ) CASE NO. 5:12CV00117 |
| Plaintiff, | ) |
| v. | ) REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) |
| | ) By: B. Waugh Crigler |
| Defendant. | ) U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's July 13, 2009 protectively-filed application for supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. § 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

In a decision dated April 22, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since July 13, 2009, his application date.[2] (R. 19.) The Law Judge determined that plaintiff's history of electrocution to the left

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. (Dkt. No. 14.) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of

hand and foot and status-post left fifth toe amputation, with skin graft tenderness and swelling in the left foot, were severe impairments.[3] (R. 19.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 21.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of sedentary work with the following limitations: a) he can only occasionally bend, stoop, and squat; and b) he has no manipulative limitations with his dominant left hand but can only occasionally reach, handle, feel, grasp, and finger with his non-dominant right hand.[4] He also found that plaintiff can ambulate without an assistive device. (R. 21-24.)

The Law Judge relied on portions of the testimony of Barry Hensley, Ed.D., a vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 24-25, 53-66, 151.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform his past relevant work. (R. 24.) However, he determined that there were other jobs that existed in significant numbers in the local and national economy which plaintiff could perform: specifically, production inspector, security guard/monitor, and light vehicle operator. (R. 24-25.) Accordingly, the Law Judge found that plaintiff was not disabled. (R. 26.)

---

impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. See 20 C.F.R. §§ 404.1572 and 1574. The sequential evaluation is a five step process used by the Commissioner to evaluate whether a claimant is disabled. See 20 C.F.R. § 404.1520(a)(4). If a claimant is found not disabled at any level prior to the final level, the inquiry is to stop. Id.

[3] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c).

[4] Sedentary work is defined as the ability to lift no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Further, it generally includes the ability to stand or walk for no more than two hours and sit for six hours of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (1983).

2

Plaintiff appealed the Law Judge's April 19, 2011 decision to the Appeals Council. (R. 1-7, 277-279.) In its September 8, 2012 notice, the Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-2.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff filed a "Brief in Support of Complaint" ("Brief") in which he advances several arguments that are not a model of clarity and, in some particulars, require a degree of interpretation. (Dkt. No. 20.) First, plaintiff argues that the Law Judge failed to adequately consider his neuropathic pain syndrome in determining the existence and severity of his

3

impairments. (Dkt. No. 20, at 2-3, 9-10.) Plaintiff's second contention is that the Law Judge improperly credited the opinion evidence of a consultative examiner over that of a State agency review physician, when the purported insufficiency of evidence to support the latter was equally insufficient to support the former. (Dkt. No. 20, at 4.) The undersigned further interprets plaintiff's third argument to be a variation of the second. He claims that the consultative examiner's opinion is not entitled to the dispositive weight it was given because he performed only a brief examination, was a family practitioner and not a neurological specialist, and based his conclusions on an incomplete medical record. (*Id.* at 4-7.) Fourth, plaintiff argues that the Law Judge erred by failing to secure a medical expert to testify at the hearing. (*Id.* at 7-9.) Finally, plaintiff contends, in three different places in the Brief, that the Law Judge's finding that he suffered only mild limitations of function in performing activities of daily living and that he was not entirely credible are not supported by substantial evidence. (*Id.* at 6, 8-9.)

As to plaintiff's first argument, it is true that the Law Judge did not find that plaintiff's neuropathic pain was an independent severe impairment. (R. 19.) The Law Judge made this finding in spite of the fact that plaintiff was specifically diagnosed with neuropathic pain syndrome. (R. 19, 357, 366.) The Law Judge found that plaintiff's history of electrocution to his left foot and hand and status-post left fifth toe amputation with skin graft tenderness and swelling in the left foot were severe impairments, but these impairments do not refer to plaintiff's ongoing residual neuropathic pain, which he undeniably suffered and clearly has caused significant limitation in his functional abilities. *See* 20 C.F.R. § 404.1520(c). Accordingly, the Law Judge's finding that plaintiff's neuropathic pain syndrome was not severe is not supported by substantial evidence.

4

The question then becomes whether the Law Judge adequately addressed the effects of plaintiff's neuropathic pain syndrome, irrespective of how he characterized its severity. *See Brooks v. Astrue*, No. 5:10cv00104, 2012 WL 1022309, at *11-12 (W.D.Va. March 26, 2012) ("...any error at step 2 is harmless because the ALJ considered the effects of all of [plaintiff's] impairments in the subsequent steps."). Here, plaintiff argues that "[t]he Law Judge mentions pain in a generic sense, but never makes any statement about neuropathic pain." (Dkt. No. 20, at 3.) Unfortunately, that argument is a mischaracterization of the Law Judge's analysis. The Law Judge extensively discussed neuropathic pain when considering the impairments he found to be severe and in determining plaintiff's RFC. (R. 19-24.) He refers to the July 22, 2009 report that plaintiff was suffering from "phantom limb" pain related to the amputation of his left "pinky" toe following electrocution injuries. (R. 19, 292.) He cited a September 29, 2009 treatment note that plaintiff was "doing very well from his burn reconstruction although he [did] have persistent edema and neuropathic pain, which is expected from this injury." (R. 20, 22-23, 326, 328.) He further referred to an August 26, 2010 diagnosis of neuropathic pain for which Neurontin was prescribed (R. 20, 368-370), as well as reports in September, October, and November with similar references. (R. 20-21, 23, 356-359, 366, 371-372.) The Law Judge also considered plaintiff's complaints of non-specific pain as found in the November 8, 2009 report of a consultative examination by Christopher Newell, M.D., and in the January 14, 2010 treatment note and referral of plaintiff to Chronic Pain Service by Benjamin McIntyre, M.D. (R. 20-21, 23-24, 336-339, 350.) Though the Law Judge did not specifically analyze a November 2010 diagnosis of neuropathic pain disorder, he was not required to have discussed all evidence of record, though the clear indications are that he considered the report in his finding that plaintiff continued to experience neuropathic pain.[5] (R. 21, 356-358, 366.) Therefore, the undersigned

---

[5] See *Deloatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983); *Piney Mountain Coal v.*

finds that the Law Judge considered the effects of plaintiff's neuropathic pain at steps 2 and 4 of the sequential evaluation. (R. 19-24.) While his finding that plaintiff's neuropathic pain syndrome was not a severe impairment is not supported by substantial evidence, he did account for its effects throughout the sequential evaluation, rendering any error harmless.

Next, plaintiff argues that the Law Judge was "internally inconsistent" in evaluating the opinion evidence of the state agency experts and the consultative examiner. (Dkt No. 20, at 4.) He points out that the Law Judge assigned no weight to the opinions of the state agency experts because they "did not have the medical records generated or provided [after the time of their review]" and "did not have the benefit of hearing testimony." (R. 23-24.) Plaintiff contends that this finding should apply especially to the consultative examiner's opinion, pointing out that Dr. Newell also did not have access to much of the medical record and did not consider hearing testimony. (Dkt. No. 20, at 4.) Plaintiff is correct that Dr. Newell was provided no medical records other than those available to the state agency experts, and he appears to have reviewed fewer records than they did. (R. 215-216, 244-245, 337.) However, the Law Judge was justified in giving greater weight to Dr. Newell's opinion, because his opinion was based on an actual examination of plaintiff. (R. 335-340.) The opinions of examining physicians are generally entitled to more weight than those of non-examining physicians. 20 C.F.R. § 404.1527(c)(1). Accordingly, the Law Judge actually acted in a manner consistent with the regulations in assigning greater weight to Dr. Newell's opinion than those of the state agency record reviewers.

Plaintiff also challenges the Law Judge's reliance on Dr. Newell's opinion in making his RFC determination. Plaintiff asserts that the opinion was not based on substantial evidence, arguing that: (1) Dr. Newell had access to few of plaintiff's medical records; (2) that Dr. Newell is not a specialist in neurology and did not consider or effectively evaluate plaintiff's neuropathic

---

*Mays,* 176 F.3d 753, 762 n. 10 (4th Cir.1999).

pain syndrome; and (3) that the tests he performed were inadequate to determine the extent of plaintiff's impairments from neuropathic pain syndrome. (Dkt. No. 20, at 4-7.) Though he had the right to object to the consultative examiner, plaintiff did not do so until the case came here on judicial review. 20 C.F.R. § 416.919j. Moreover, Dr. Newell was qualified under the regulations to serve as a consultative examiner, and there is no requirement that consultative examiners or treating sources need to be specialists, though the absence or presence of a specialty could impact the weight given that medical evidence. 20 C.F.R. § 416.919g; 20 C.F.R. § 404.1527(c)(5).

Apart from the argument advanced by plaintiff's counsel, there is no medical evidence before the court that Dr. Newell's opinion is "inadequate." Neither plaintiff nor his counsel is a medical expert, and may not simply declare a medical opinion inadequate. Plaintiff has cited no medical opinion or treatise, court decision, or agency regulation to support his contentions, nor can he, as the regulations themselves permit weight to be given to Dr. Newell's findings. In fact, the undersigned notes that Dr. Newell's report appears to contain all the elements for a complete examination under the regulations. (R. 335-340.); 20 C.F.R. § 416.919n(c). Under the circumstances presented here, the Law Judge did not err by relying on Dr. Newell's consultative opinion to inform his findings concerning plaintiff's RFC. 20 C.F.R. § 416.927.

Next, plaintiff contends that the Law Judge erred by failing to secure a neurological medical expert to be present and testify at the administrative hearing. (Dkt. No. 20, at 7-8.) The sole basis for this contention is that none of the plaintiff's treatment providers or examining physicians was a neurologist. (Dkt. No. 20, at 7.) The regulations squarely place it within the Law Judge's discretion to determine whether medical expert testimony is necessary. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1529(b); *Hearings Appeals and Litigation Law Manual*

("HALLEX") § I-2-5-34. While such testimony may prove useful, it is not required unless: 1) the Appeals Council or a court so orders; 2) an expert is needed to evaluate and interpret background medical date; 3) the Law Judge is considering finding that the claimant's impairments meet a medical listing; and/or 4) when there is insufficient evidence of record to support a decision. *Id.*; *See generally* 20 C.F.R. §§ 404.1519a (2012); *Bradbury v. Astrue*, 2011 WL 6296728, *5 (W.D.Va. December 15, 2011). The fact that a claimant fails to produce sufficient evidence to support a claim for disability is not one of the factors to consider, and is qualitatively different from where, for example, the record evidence is insufficient to support a decision. In essence, plaintiff is asking the court to compel the Commissioner to acquire evidence for him when the regulatory scheme places the burden of proof on plaintiff until the final sequential inquiry. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Accordingly, the undersigned finds that the Law Judge did not abuse his discretion by failing to call a medical expert at the administrative hearing.

Finally, plaintiff argues that the Law Judge's credibility findings are not supported by substantial evidence. (Dkt. No. 20, at 6, 8-10.) While plaintiff's treatment records demonstrate the presence of continued neuropathic pain from the loss of his little toe, most of the physical examination findings have been reported as normal. In September 2009, three months post-surgery, plaintiff presented with persistent edema, but his neuropathic pain was stable, and his treating physician believed he was "doing very well." (R. 326, 328.) Dr. Newell, the consultative examiner, observed that plaintiff had a mild left antalgic gait, could not ambulate on his toes and heels on his left side, and had some tenderness, weakness, and reduced range of motion in his right hand and left lower extremity, along with swelling in his left foot and ankle. (R. 335-339.) However, these limitations generally were found to be mild. *Id.* The rest of the

findings on physical examination were normal, and Dr. Newell opined that plaintiff could walk or stand for two hours of an eight-hour workday without need of an assistive device, sit for six hours, lift or carry ten pounds frequently and twenty pounds occasionally, and had some occasional limitations in bending, stooping, squatting, and using his right hand. *Id.*

In January 2010, plaintiff was "doing well," with healed skin grafts and amputation site and a good range of motion in his ankle and toes. (R. 350.) Dr. McIntrye offered that he "would not anticipate [plaintiff] to have any pain at this point," and he stated, "I do not think he has any musculoskeletal pathology at present to account for this chronic pains that he states he has." *Id.* However, Dr. McIntyre did refer plaintiff to Chronic Pain Service for evaluation. *Id.* In August and September 2010, plaintiff presented normal physical examination, though he reported continued neuropathic pain, described as 8/10, and displayed only mild limitations in right hand motor strength. (R. 368-372.) Plaintiff's Neurontin was continued, and he was referred to podiatry to get a shoe insert for his left foot, with a one month excuse from work. (R. 369-370, 372.) Finally, in October and November 2010, plaintiff complained of continued left foot neuropathic pain, which was diagnosed as neuropathic pain syndrome, but he was found completely normal in range of motion, strength, and reflexes. (R. 356-359.)

Plaintiff is not required to prove the intensity, persistence, and limiting effects of his pain only with objective evidence. *See Hines v. Barnhart*, 453 F.3d 559, 563-565 (4th Cir. 2006). In this case, the credibility of plaintiff's subjective complaints was critical to whether he is disabled. *See Craig v. Chater*, 76 F.3d 585, 595-596 (4th Cir. 1996). Here, the Law Judge concluded that plaintiff's allegations were not entirely credible, and, upon a thorough review of the record, the undersigned finds that there is substantial evidence supporting that determination. (R. 22.) As the Law Judge pointed out, plaintiff frequently was non-compliant with his recommended

treatment plan. (R. 19-24.) In September 2009, plaintiff was given a prescription for compression garments for edema control and scar compression. (R. 326, 328.) However, plaintiff "never followed through with this" stating that "he has been doing just fine without them." (R. 350.) He was referred to podiatry for a shoe insert for his left foot in September 2010, but he failed to show up for the appointment. (R. 359.) Sometime in October 2010, plaintiff also stopped taking Neurontin for his neuropathic pain solely because he did not think it was helping enough.[6] (R. 356-359.) The Law Judge relied on all this in making his RFC determination and credibility finding, and they are supported by substantial evidence.[7][8] *See* 20 C.F.R. § 404.1530; SSR 96–7P, 1996 WL 374186, at *7-8; *See also Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992).

For all these reasons,[9] it is RECOMMENDED that an Order enter DENYING plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are

---

[6] Apparently, plaintiff later changed his mind and agreed to resume the medication. (R. 357.)

[7] Furthermore, there is about a seven month gap in plaintiff's treatment record, from January through August 2010. (R. 350, 368.) Thus, there is no evidence he sought treatment during this time. (R. 350, 368.) The Law Judge may rely on gaps in the treatment record as evidence that plaintiff failed to pursue treatment and is not as severely impaired as he alleges. *See* SSR 96–7P, 1996 WL 374186, at *7-8.

[8] Though plaintiff claims he had difficulties in accessing treatment, there is no evidence in the record that supports his allegations, and he did not argue such in his administrative hearing, other than missed medical appointments from a brief period in prison in December 2010. (R. 32-64.); (Dkt. No. 20, at 6.) Therefore, plaintiff did not meet his burden of explaining his failure to adhere to the recommended treatment plan or seek out treatment. *See* 20 C.F.R. § 404.1530; SSR 82–59, 1982 WL 31384, at *4 (1982).

[9] Plaintiff also contends that the VE's testimony was not based on all of plaintiff's abilities and limitations. (Dkt. No. 20, at 10.) Having found that the Law Judge's RFC and credibility determinations are supported by substantial evidence, this argument is rendered moot.

entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

July 15, 2013
Date